34 So.2d 704

## SHIREY v. TOWN OF WINFIELD.

### 6 Div. 632.

Court of Appeals of Alabama.

April 6, 1948.

Fred Fite, of Hamilton, for appellant.

Fite and Fite, of Hamilton, for appellee.

HARWOOD, Judge.

This appellant was found guilty in the court below of violation of an ordinance of the Town of Winfield prohibiting the operation of pool rooms within said town or the police jurisdiction thereof.

Appellant had previously been convicted in the Mayor's Court of this charge, and had perfected his appeal to the Circuit Court of Marion County. In the circuit court trial was had before the court without a jury by agreement between the parties.

It was further agreed between the parties at the start of the trial below that the complaint filed in the Mayor's Court be refiled in the circuit court. It was also agreed that the ordinance as set out in the complaint, and which appellant was charged with violating, is and was a valid ordinance of the Town of Winfield at the time of the commission of the offense alleged in the complaint.

The evidence introduced below is virtually without dispute, and shows that the ordinance prohibiting the operation of pool

rooms in the Town of Winfield became effective on January 1, 1947. Previous to this time pool rooms had been licensed by the town, and Tol Hollis and Herman Hollis had operated a pool room in Winfield for a number of years prior to the enactment of the above mentioned ordinance. This appellant had managed the Hollis' brothers pool room for them twice during its operation, but was not serving as manager when the pool room closed upon the passage of the above mentioned ordinance.

About the 12th of March 1947 there was organized the Winfield Social Club under the provisions of Article 5, Title 10, Code of Alabama 1940. The articles of incorporation and charter issued are in evidence, together with the constitution.

The Articles of Incorporation show Tol H. Hollis as President, Herman Hollis as Vice President, and J. A. Shirey, appellant here, as Secretary and Treasurer. No other officers are shown.

In the Constitution the purposes of the Winfield Social Club are set forth as being "to provide a place where its members can spend their idle time for recreation and social contacts with one another; to provide for its members magazines, papers, books and other reading material * * * to provide games of amusement and pleasure; to provide an opportunity for its members to improve their mental and social understanding of any issues which may interest such members."

Articles 2 and 3 of the Constitution are as follows:

"Article 2. There shall be no dues, but charges in the nature of assessments, or other charges, may be made by the Executive Committee for defraying the expenses and overhead charges of the Club. The manner, the way, the amount, and the nature of the charges or assessments shall be left to the discretion of the said Executive Committee. It is anticipated that certain necessary and seasonal expenses will have to be met, and the amounts of the assessments and charges may vary from time to time. The Executive Committee shall have authority to obtain equipment and furniture from any sources they may deem proper, either by purchase, rental, loan or otherwise, and shall have authority to bind the club therefor.

"Article 3. The three elected officers shall constitute the governing board and shall be known as and be the Executive Committee. The Secretary and Treasurer shall be the executive officer of the Club and of the Executive Committee, and he shall be Chairman of the Executive Committee."

Earlier on the day of appellant's arrest he had reopened the pool room formerly operated by the Hollis Brothers, the Executive Committee of the Winfield Social Club, which was composed of the Hollis Brothers and appellant, having made arrangements for the use of the pool room by the Club.

Nothing was changed in the premises, or equipment, and the only new thing was a copy of the Charter of the Club lying folded on a shelf. The same sign announcing Billiard and Pool hung outside. Some witnesses did testify that the place appeared to have been swept recently, and to that extent was a little cleaner than formerly.

Several persons came in and played pool. All such persons were, according to the appellant, members of the Club or were made members and issued cards before being allowed to play. The charges per game were the same as they had always been.

As to how membership was attained in this Club we think is well illustrated by the following excerpt from the testimony of the appellant in the trial below:

"Q. All of these men you speak of who played pool in there paid you five cents a cue? A. Yes, sir.

"Q. There were no exceptions to that rule? A. No, sir.

"Q. None at all? A. No, sir.

"Q. You say you do not have any records of any meetings of the Executive Committee, is that correct? A. No, sir. I do not have any.

"Q. None at all? A. No, sir.

"Q. And no record was ever made of any meeting of the members of the club? A. No, sir.

"Q. And no record was ever made of any of the policies of the Executive Committee, were there? A. No, sir.

478

"Q. It was just up to you to issue a man a card if he wanted to become a member of the club? A. I was to be the judge of whether or not he was qualified to become a member of the club.

"Q. You had no standard that he had to go by to qualify to become a member of the club, did you? A. They had not given me any.

"Q. Was there any age limit on it? A. I do not think so.

"Q. There was no age limit either way as to whether a man could be a member of the club, was there? A. No, sir.

"Q. Just so he wanted to become a member of the club and play pool was all that was necessary? A. I think they said something about not being under eighteen years of age.

"Q. Who said that? A. I think Mr. Fite said that.

"Q. Were there any other qualifications necessary for a man to become a member of the club? A. No, sir.

"Q. The Executive Committee did not set any standard of qualifications? A. No, sir.

"Q. In other words, you were not to turn down any man who wanted to play pool in there under the old set up? A. Nothing was said about it.

"Q. Or making any distinction between them? A. No, sir.

"Q. None at all? A. No, sir."

The governing body of a municipality has full power to prohibit the operation of all kinds of amusements within its corporate limits or police jurisdiction. Section 757, Title 37, Code of Alabama 1940.

Sections 237–258, comprising Article 1 of Title 14, Code of Alabama 1940, pertain to the licensing and regulation of billiard rooms when their operation is permitted.

Section 252 of the above Article exempts from its provisions "billiard tables or billiard rooms operated by industrial concerns for the exclusive use of their employees, Young Men's Christian Association, religious orders, charitable institutions, state, county or city institutions, fraternal orders, or *bona fide* clubs using such tables for employees or members only." (Italics ours.)

This being an appeal from the violation of a municipal ordinance errors were duly assigned, and our review is limited to such assignments. The only point raised by such assignments is the correctness of the judgment of the lower court finding this appellant guilty under the law and facts above set out.

This case was tried without a jury. The court's conclusion, from the evidence presented to him, must be accorded the effect of a jury verdict, and will only hesitantly be disturbed by us, and then only after resolving every presumption in favor of the correctness of his conclusion. See 6 Alabama Digest, Criminal Law, ☞260 (11) for numerous cases illustrating the above principle.

The evidence adduced in this case casts serious doubts on the bona fide character of the Winfield Social Club. Indeed, the inference is strong that its organization and operation was but a scheme and a sham to nullify the operative effect of the duly enacted ordinance of the Town of Winfield prohibiting the operation of pool rooms. That which is forbidden directly cannot be done indirectly, and the law abhors evasions and subterfuges. In re Opinions of Justices, 225 Ala. 502, 144 So. 111. See also Scharnagel v. State, 32 Ala. App. 123, 22 So.2d 178.

This cause is due to be affirmed and it is so ordered.

Affirmed.